# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **ROGER JAMES GIVENS,** | ) | CASE NO. 7:17CV00553 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD CLARKE,** | ) | By: Norman K. Moon |
| Respondent. | ) | Senior United States District Judge |

Roger James Givens, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Campbell County Circuit Court (dkt. 1). Respondent filed a motion to dismiss Givens' § 2254 petition (dkt. 10), and Givens responded (dkt. 15), making the matter ripe for disposition. After review of the record, I will grant the motion to dismiss.

## I. BACKGROUND

On December 27, 2013, the Campbell County Circuit Court entered a final order convicting Givens, pursuant to an *Alford* plea, of object sexual penetration.[1] In exchange for Givens' plea, a count of custodial indecent liberties and a count of object sexual penetration as a second violent felony sex assault were *nolle prossed*. The court sentenced Givens to forty years' imprisonment on the count to which he pled, with fifteen years suspended. Givens' direct and collateral appeals were unsuccessful. (*See* dkt. 17-1 through 17-4.)

At Givens' plea hearing, the Commonwealth proffered that the evidence at trial would have demonstrated that:

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970). An *Alford* plea is "an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest." *United States v. Taylor*, 659 F.3d 339, 347 (4th Cir. 2011).

[B]etween the dates of January 1, 2012, and March 29, 2012 . . . [the victim] was seventeen years of age. . . . [S]he had known Mr. Givens as a—actually told at one point in her life that it was her father, but by the time this incident took place [she] knew [he] was not her father, but it was—he was to pick her up, take her to Roanoke for some quality time together.

So he picked her up in the car . . . [and he] looked over at her, actually looked over at her genital area, at her vagina she would testify, and said I've been thinking about that.

And as they traveled up [Route] 29 in the county, he reached over and began to massage the outside of her vagina on top of her clothes. And while still on 29 in Campbell County up the road, [he] put his hand inside of her pants [] and inserted his fingers inside of her vagina. . . .

[T]he court has heard some argument on the intimidation earlier, and we'd ask that we incorporate that argument to facilitate this guilty plea for purposes of the law of intimidation.

She would testify that she began knowing [Givens] back when she was in junior high, some times a little before. At the end of junior high, she testified that she was in the car with her mother and Mr. Givens, that Mr. Givens did not like the way she did not talk to him.

So they went to the house in Vinton. He owned a house in Vinton and that was before she got into high school, Your Honor. He then took down a sigma paddle from the home and began to beat her over twenty to thirty times with a wooden paddle for her behavior inexplicably. So a severe beating took place before high school. Then she would testify from her perspective inexplic[ably], because she had no ties to Campbell County, she was moved with her mother to a home here in Campbell County to go to Brookville school where she knew no one.

During the course of those years in high school, Judge, the following things, she would testify, began happening to her. She was on her—around fourteen years of age, her freshman year, brought back to that house in Vinton where she was told—Mr. Givens was in a chair, she was by herself, Mom was not with her that weekend, to strip—take all of her clothes off. She was confused. She went into one room, Judge, came back in her underwear.

That wasn't good enough for [Givens]. He said I want to see you completely naked. She was completely confused, very scared at this point. She was fourteen when it began.

He then went inside and inserted his fingers inside of her in the bedroom. She was shaking, she recalls, her leg was shaking. He commented to her, why is

your leg shaking. He said, get dressed and go into the room. She went into the other bedroom.

Later that night, he returned to the bedroom and committed an act of—she would say, Judge, his finger went inside of her again, his thumb. Then he said, I won't put, her phrase was, my dick inside of you.

Guilty Plea Hr'g Tr. at 11-15 (Dec. 17, 2015).

At this point in the hearing, the Commonwealth asked if the defense would stipulate to the element of intimidation. Defense counsel refused, but conceded that the Commonwealth had established that Givens had beaten the victim and that a single beating could satisfy intimidation. *Id.* at 15-16. The Commonwealth continued the proffer:

[S]he would testify that over a period of four years she was repeatedly forced to have sex. She protested on a couple of occasions. She had been punched in the chest on multiple occasions. That was actually—and slapped in the face. She was told by the defendant that you have to have sex with me or else I'll be out having to get it on the street.

There was a history that . . . can be physical intimidation or a relationship between the parties that existed over four years, or towards the end she would testify and her quote was, at the end, by the time this incident happened, the trial, she felt as that was what she existed for, was to simply satisfy his sexual needs, and that she said there was no use protesting, it was just going to happen, she had done it before. And she was afraid of him physically, of his size.

Judge, as well, . . . we would introduce the SANE[2] nurse saying there [were] injuries to the victim in this case in the form of scarring in the inside of her vagina.

We would also introduce the prior convictions, Judge, that she—he had that you heard about.[3]

*Id.* at 17-18. The court accepted the *Alford* plea, concluding that "a strong factual basis" supported the charge and that Givens entered the plea freely and voluntarily. *Id.* at 25, 33. Givens' direct appeal and subsequent state court habeas petition proved unsuccessful.

---

2  Sexual assault nurse examiner.
3  Givens was previously convicted of a violent sexual assault.

3

## II. PETITIONER'S CLAIMS

On December 14, 2017, Givens filed the present petition, alleging the following grounds:

1. Counsel was ineffective for failing to inform Givens of the nature and direct consequences of an *Alford* plea;

2. Counsel was ineffective for failing to prepare for trial or interview and prepare witnesses;

3. Counsel was ineffective for coercing Givens into taking an *Alford* plea on the night before the trial was scheduled; and

4. Givens was denied due process when, after viewing the proffered evidence in the light most favorable to the Commonwealth, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Dkt. 1.) Respondent acknowledges that Givens' petition is both exhausted and timely, and I conclude that no claims are procedurally barred from federal habeas review.[4] After reviewing the parties' submissions, I find no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *see also* 28 U.S.C. § 2254(e).

## III. STANDARDS OF REVIEW

To obtain federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, a federal court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

---

[4] The respondent argues that *Anderson v. Warden of Powhatan Corr. Ctr.*, 281 S.E.2d 885 (Va. 1981), constitutes an independent and adequate state ground for procedural default; however, the Western District of Virginia has (so far) declined to treat *Anderson* as such. *Mangum v. Clarke*, No. 7:11-cv-00205, 2011 WL 4737418, at *1 (W.D. Va. Oct. 6, 2011) (reviewing claim *de novo*).

4

(1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or

(2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists' could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged *Strickland v. Washington* test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-87 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." *Id.* at 689; *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014).[5] When reviewing a *Strickland* claim under AEDPA, the court's review is "doubly" deferential. *See Richter*, 562 U.S. at 105.

For *Strickland's* first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687-88. "The question is whether an attorney's

---

[5] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Gentry*, 540 U.S. at 8.

representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). For the second prong, a petitioner must show that, but for counsel's alleged unprofessional error, there is a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." *Id.* For a petitioner that pleaded guilty, even if he establishes counsel's performance was deficient, relief is still unavailable unless "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Furthermore, the Fourth Circuit has generally instructed district courts to dismiss habeas petitions that contradict the plea colloquy. *See United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."); *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (28 U.S.C. § 2254 petition for writ of habeas corpus) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.").

## IV.   ANALYSIS

### A.   Claim 1

In Claim 1, Givens asserts that counsel failed to inform him of the consequences of his *Alford* plea. Specifically, Givens alleges that counsel failed to advise him that his *Alford* plea precluded any direct appeal, including the ability to challenge the sufficiency of the evidence.

Givens argues the following: (a) he did not give up his right to appeal his conviction in either the written plea agreement or his plea colloquy; (b) his plea was not a "traditional" *Alford* plea because defense counsel refused to stipulate to intimidation and engaged in a spirited debate regarding the Commonwealth's proffer; (c) the twenty-five year sentence was essentially a life sentence; and (d) he was "not quite himself at the plea hearing." Pet. at 10, Dkt. 1.

On habeas review, the state circuit court rejected Claim 1 pursuant to *Anderson v. Warden of Powhatan Corr. Ctr.*, 281 S.E.2d 885 (Va. 1981), which holds that a defendant's representations at the plea colloquy regarding the validity of his plea and effectiveness of his attorney are generally binding on collateral review. Specifically, the court determined:

> [D]uring his guilty plea, Petitioner told [the court] that he understood that his plea would give up his rights to a jury trial, to remain silent, to confront and cross-examine witnesses, and to appeal his sentence. He further told the Court he had read and understood the plea agreement and had sufficient time to discuss both the agreement and the *Alford* plea with his counsel. He also stood silently as his attorney agreed that there was sufficient evidence of the charge, including his intimidation of [the victim]. Petitioner conceded within his Petition itself that "the court asked if Petitioner understood that by taking his plea, he may be giving up his right to appeal the sentence." He also signed a plea agreement that correctly described his plea as an agreement "to plead guilty (Alford plea)" and stood silently as his lawyer accurately referenced his plea as both an *Alford* plea and a guilty plea. Petitioner is bound by his prior statements unless he offers a reason to controvert them.
>
> Petitioner attempted to controvert his statements at plea by claiming that his *Alford* plea was not a "standard" *Alford* plea because his attorney proffered that she would have, at trial, offered witnesses to dispute the intimidation element. The Court finds that his attorney's advocacy did not undercut her concessions—made as he stood in silent agreement beside her—that "there was sufficient evidence to convict him" and that Petitioner was pleading guilty under the belief that "based on the evidence that the court is allowing in, that the court has ruled on thus far, that he will be convicted." Nor was his bare assertion that he did not understand his plea, made without any support in the contemporaneous record or proffered evidence, sufficient to controvert his prior statements. The Court finds that Petitioner was not inexperienced in life or the criminal justice system. He was a 47-year-old doctoral candidate with at least one prior conviction for a violent sexual assault. He proffered no evidence to controvert the Court's finding that he

understood the consequences of his plea, including that he was foreclosed the right to appeal sufficiency.

> The Court further finds that . . . Petitioner's claim is barred because he did not establish prejudice. Petitioner explicitly chose to enter his plea because he did not want to be exposed to a mandatory life sentence under [Va.] Code § 18.2-67.5:3. Subjectively, Givens wanted the security of his guilty plea. Objectively, no reasonable defendant in his position would have turned down a plea to twenty-five years' imprisonment, as opposed to two life sentences he faced, when his only defenses were (i) a fourteen-year-old who had believed him to be her father and whom he physically abused "voluntarily" had a multi-year sexual relationship with him and (ii) it was actually her mother's fault because she "facilitated" the relationship. Because there is no evidence of a reasonable likelihood that Petitioner would have rejected the plea agreement, he did not establish prejudice.

*Givens v. Clarke*, No. CL16-1071-00, slip op. at 7-9 (Campbell Cnty. Cir. Ct. Oct. 11, 2016) (internal citations and footnote removed), Dkt. 17-4.[6] The circuit court also noted that Givens' proffered attacks on the victim's credibility, "that she did not sufficiently resist, did not sufficiently complain to him or others, and did not sufficiently avoid all contact with him—would not have presented a compelling defense to a factfinder, particularly given [Givens'] position as a preacher and father figure to the victim." *Id.* at 9 n.1.

I agree with the state circuit court's analysis. Although *Anderson* is not directly applicable in federal court, similar rules apply. *See Lemaster*, 403 F.3d at 221-22; *Fields*, 956 F.2d at 1299. To collaterally attack a guilty plea, a petitioner must establish either that (1) counsel's performance was deficient and that, but for counsel's alleged errors, he would not have pleaded guilty; or (2) the plea itself was not voluntary or intelligent. *United States v. Broce*, 488 U.S. 563, 574 (1989). Givens fails to establish either.

---

[6] The Supreme Court of Virginia summarily denied Givens' claims in his state habeas appeal. Therefore, I "look through" to the Campbell County Circuit Court's habeas decision. *Wilson v. Sellers*, --- U.S. ---, ---, 138 S. Ct. 1188, 1192 (2018) (under AEDPA the "federal court should 'look through' the unexplained decision [of a higher state court] to the last related state-court decision that does provide a relevant rationale . . . [and] presume that the unexplained decision adopted the same reasoning").

For arguments (a) through (c), even if counsel's performance was deficient, Givens has not demonstrated prejudice. First, Givens' potential defenses are not compelling. He asserts that he was a respected community leader, the relationship was consensual, the victim lied, and the victim's mother facilitated the relationship. The record establishes that Givens was well aware of these arguments when he pleaded guilty—they are identical to the hypothetical defenses that counsel proffered at his guilty plea hearing. Givens entered the *Alford* plea and sat in silence while counsel raised these defenses but ultimately admitted that, given the trial court's evidentiary rulings and the potential life sentences, she had advised Givens that "it would be in his best interest to subject himself to the *Alford* plea." Guilty Plea Hr'g Tr. 24. Second, the trial court *nolle prossed* other charges in exchange for Givens' plea. If he had rejected the plea, Givens would have faced multiple charges with a potential punishment of multiple life sentences. The additional charges were *nolle prossed* in exchange for his *Alford* plea. Therefore, Givens fails to demonstrate that, but for counsel's alleged errors, there is a reasonable likelihood that he would not have pleaded guilty and he would have proceeded to trial. *See Broce*, 488 U.S. at 574.

Separately, as to arguments (b) and (c), Givens fails to establish deficient performance. In argument (b), Givens avers that his plea was not a "traditional" *Alford* plea, because counsel refused to stipulate to intimidation and counter-proffered impeachment of the victim's account of events. Givens also alleges that he was confused by counsel's actions and that significant evidence undermined the credibility of the victim. However, counsel's arguments did not undermine the validity of the plea or elevate it beyond an admission of guilt, because *Alford* pleas are essentially equivalent to traditional guilty pleas. *See Price v. Johnson*, 218 F. App'x 274, 275 (4th Cir. 2011) (conviction based on an *Alford* plea did not alter petitioner's substantial rights compared to a traditional guilty plea); *Perry v. Commonwealth*, 533 S.E.2d 651, 652-53 (Va. App. 2000) (*Alford*

9

plea treated same as a guilty plea). The distinguishing feature of an *Alford* plea is that the defendant does not confirm the factual basis underlying his plea. *United States v. King*, 673 F.3d 274, 281 (4th Cir. 2012).

Givens' assertion that his sentence was essentially a life sentence (argument (c)) is unconvincing. Givens was forty-seven at the time of his conviction, and the court sentenced him to twenty-five years' imprisonment. Therefore, he has a real opportunity to leave prison alive at seventy-two years old. *See United States v. Johnson*, 685 F.3d 660, 663 (8th Cir. 2012) (78-month sentence for seventy-year defendant old not a de facto life sentence).

For argument (d), that he was "not quite himself at the plea hearing," Givens does not appear to raise an ineffective assistance of counsel claim. Instead, he challenged his plea as involuntary, because he asserts that he failed to understand the plea agreement on account of being "outside of himself" at the hearing after "spending a year in jail and being accused of such a heinous crime." Pet. at 11.

"The test for determining competency is whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him." *United States v. General*, 278 F.3d 389, 395-96 (4th Cir. 2002) (internal citations omitted). General anxiety, stress, and time pressure do not invalidate guilty pleas. *See, e.g.*, *Miles v. Dorsey*, 61 F.3d 1459, 1470-71 (10th Cir. 1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary."); *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989) (holding that "[c]riminal prosecutions are stressful experiences for nearly all concerned," and the petitioner's "agitated emotional state" did not invalidate his guilty plea).

Givens argues that his statements during the plea colloquy demonstrated that his plea was involuntary: he incorrectly told the court that he was forty-eight years old when he was actually forty-seven, and he initially asserted that he only understood the plea agreement "[f]or the most part." Guilty Plea Hr'g 5, 9. However, Givens has not alleged that his incorrect statement resulted from anything but general anxiety and stress. *See Miles*, 61 F.3d at 1470-71. Moreover, after Givens' stated "[f]or the most part," the court requested clarification on whether he understood. Givens replied "Yes, absolutely." Guilty Plea Hr'g 9. Givens further confirmed both his understanding of the plea agreement and his voluntariness to enter it. He informed the court he was not under the influence of drugs, medication, or alcohol; he had not been threatened; he had no physical impairment preventing his understanding of the agreement; he understood all of the court's questions; and he was satisfied with the performance of counsel. *Id.* at 9-10. Therefore, he fails to establish that his plea was involuntary.

Accordingly, the state court's application of *Anderson* was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and I will grant the motion to dismiss as to Claim 1.[7]

### B.     Claim 2

In Claim 2, Givens asserts that counsel was ineffective for: (a) failing to interview and prepare witnesses for trial; (b) failing to prepare an affirmative defense regarding intimidation, (c) failing to record a phone hearing that "contributed" to the denial of a motion for speedy trial and a motion to dismiss the enhanced indictment; and (d) failing to request a hearing on the victim's sexual history. Givens also appears to allege two new claims: counsel was ineffective for (e) rarely

---

[7] To the extent that the state court did not directly address the underlying merits of any part of Claim 1, Givens still fails to establish that the state court's application of *Anderson* was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts.

11

visiting or communicating with Givens, and (f) being investigated by the Virginia State Bar related to other cases.

At the threshold, Givens fails to satisfy the requirements of *Lemaster* or establish prejudice. On habeas review, the circuit court held:

> Nor did Petitioner establish prejudice [] on [Claim 2]. Although he claimed in his Petition that counsel's failures "coerced" him into pleading guilty, during his plea colloquy Petitioner told this Court that he decided himself to plead guilty; was doing so freely and voluntarily, without being forced or threatened; and was "absolutely" satisfied with counsel. As he offered no valid reason to controvert these statements, the Court finds that he is bound by them, and they conclusively establish that he was not coerced.

*Givens v. Clarke*, No. CL16-1071-00, slip op. at 12-13 (citations removed). I agree with the state circuit court's analysis. Givens has not presented a valid reason why he should not be bound by his statements at the plea colloquy; therefore, the state court's determination that review of Claim 2 was barred by *Anderson* was not unreasonable. Nevertheless, I will review the merits of his claims.

On habeas review, the state circuit court rejected Claim 2 arguments (a) and (b):

> To the extent that Petitioner claimed counsel failed to prepare him or other witnesses for trial, the Court finds that these claims ignore Petitioner's knowing and voluntary decision to enter an *Alford* plea. Although the United States Supreme Court has recognized that a complete failure by defense counsel to put the government's case to sufficient adversarial testing *at trial* constitutes presumed prejudice, *see United States v. Cronic*, 466 U.S. 648, 659 (1984), the scope of the presumption is limited. *See Bell v. Cone*, 533 [sic – 535] U.S. 685 (2002), *Sheikh v. Buckingham Corr. C[tr.]*, 264 Va. 558, 570, 570 S.E.2d 785 (2002). A voluntary plea of no contest waives several important constitutional rights, such as the right to trial, the right against self-incrimination, and the right to confront one's accusers, each of which are hallmarks of the adversarial system. *See Terry v. Commonwealth*, 30 Va. App. 192, 197, 516 S.E.2d 233, 235-36 (1999) (discussing guilty plea); *see also Jackson*, 255 Va. at 555, 499 S.E.2d at 276 (*nolo contendere* plea is a functional equivalent to guilty plea). Further, as the United States Supreme Court has noted, "the defendant who pleads guilty puts nothing in dispute regarding the essentials of the offense[,] rather, the defendant takes those matters out of dispute . . . ." *Mitchell v. United States*, 526 U.S. 314, 322-23 (1999). Upon entry of a plea, and concomitant waiver of constitutional rights, no adversarial

12

relationship exists as to the issues of guilt between the accused and the Commonwealth. Thus, Petitioner's counsel no longer had an opportunity, much less an obligation, to prepare for trial or to subject the indictments to adversarial testing.

*Givens v. Clarke*, No. CL16-1071-00, slip op. at 10. I agree with the state circuit court's analysis. Givens' knowing and voluntary guilty plea waived all nonjurisdictional defects in the proceedings, including claims of ineffective assistance that do not relate to the voluntariness of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001); *United States v. Lynch*, 991 F.2d 792 (Table), 1993 WL 128525, at *1 n. (4th Cir. 1993) (noting a valid guilty plea waives all nonjurisdictional defects based on *Tollett* and *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)).

Despite Givens waiving these ineffective assistance claims under *Tollett*, the state court reviewed the merits of Claim 2 arguments (a) and (b):

> Furthermore, the Court finds that Petitioner failed to proffer what exculpatory testimony he could have personally offered. This portion of his claim therefore fails. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (no habeas relief for inadequate investigation without a proffer of what favorable evidence or testimony would have been produced); *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (without specific affirmative showing of what missing evidence would have been, habeas court cannot even begin to apply *Strickland*).
>
> The Court further finds that Petitioner's claims that counsel failed to prepare other witnesses is belied by the fact that counsel proffered, during his plea colloquy, that she had witnesses available to testify regarding Petitioner's relationship with his victim[]. The affidavits of Givens' friends and relatives, attached to his petition, offered no details that counsel did not provide to the Court on the date of plea. Accordingly, his claims that counsel performed deficiently by failing to prepare his defense are belied by the record. Moreover, Petitioner chose to plead guilty knowing that his witnesses were on the way to Virginia to testify on his behalf and believed that they were prepared. He proffered nothing more counsel could have done—other than learn his defense and arrange for witnesses on his behalf, which she did—that would have altered his decision to plead guilty.

*Givens v. Clarke*, No. CL16-1071-00, slip op. at 10-11. I agree with the state circuit court's analysis. Although it is generally difficult to definitively determine if counsel's preparation of

13

defenses and witnesses for trial was constitutionally deficient when a defendant pleads guilty and waives his right to a trial, counsel's extensive counter-proffer at Givens' guilty plea hearing and her explanation of her potential trial strategy clearly demonstrates that counsel had prepared valid defenses and witnesses.

First, to the extent that Givens alleges that counsel failed to prepare him as a witness, his claim fails because he has not proffered what his personal testimony would have been. *See Beaver*, 93 F.3d at 1195; *Nickerson v. Lee*, 971 F.2d 1125, 1135 (4th Cir. 1992) (habeas petitioner must present evidence supporting his claims or point to evidence in the record), *abrogated on other grounds by Gray v. Netherland*, 518 U.S. 152, 165-66 (1996).

Second, Givens has not established that counsel failed to prepare defenses and other witnesses. Counsel refused to stipulate as to intimidation, introduced the defense of a prior sexual relationship, and informed the court, at length, of her probable trial strategy. *See* Plea Hr'g Tr. 20-24. After hearing her argument, the court asked counsel whether she believed it was in Givens' best interests to enter the *Alford* plea. Counsel replied:

> I have actually spent a great deal of time discussing just that language with him, whether I thought it was in his best interest.
>
> And quite frankly, Your Honor, this is—I'm not suggesting this at all to suggest anything inappropriate with the court, but I have advised him very specifically that in light of how the court has ruled on the motions and the type of evidence that the court has determined will come in and over my objection and over, you know, those types of issues, that it would be best to subject himself to the Alford plea . . . .
>
> * * *
>
> [We] believe that based on the evidence that the court is allowing in, that the court has ruled on thus far, that he will be convicted and the jury will have no ch[oice] but to sentence him to life in prison.

*Id.* at 24-25. Considering counsel's extensive counter-proffer and her demonstrated understanding of Givens' case, arguments (a) and (b) are unavailing.

> The circuit court also denied argument (c):
>
> To the extent that Petitioner claimed counsel failed to record a telephone motion hearing that "ultimately contributed" to the denial of a motion for a speedy trial and a motion to dismiss the enhanced indictment, the Court finds that Petitioner's claims fail as conclusory. Petitioner did not proffer the date of the alleged motion hearing or explain how a failure to record it would have caused a motion to be denied on its merits. Nor did Petitioner proffer that either a speedy trial motion or a motion to dismiss would have been meritorious.

*Givens v. Clarke*, No. CL16-1071-00, slip op. at 12 (citations removed). I agree with the state circuit court's analysis. Givens' allegations are conclusory because they lack any factual support, including: hearing dates, how recording the phone hearing would have resulted in a different outcome, and the merits of the motions. Therefore, argument (c) is without merit. *See Nickerson*, 971 F.2d at 1135.

> As for argument (d), the state habeas court held:
>
> To the extent Petitioner complained that counsel failed to move for a hearing allowing him to present evidence regarding prior sexual acts between the victim and either Petitioner or third parties, the Court finds that Petitioner failed to proffer what, if any, evidence existed. Without such a proffer, this Court cannot evaluate if such a motion would have been meritorious or if Petitioner was prejudiced.

*Givens v. Clarke*, No. CL16-1071-00, slip op. at 12 (citation removed). I agree with the state circuit court's analysis. Argument (d) is unavailing because Givens has not proffered what, if any, evidence he would have presented. *See Beaver*, 93 F.3d at 1195.

For argument (e), Givens fails to show that counsel was ineffective because he admits that counsel met with and communicated with him, and "there is no established 'minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.'" *Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005) (quoting *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988)). During his plea colloquy, Givens told the court, under-oath, that he was satisfied with counsel's services, and counsel candidly

15

discussed her interpretation of the case and the advice she offered to Givens. Furthermore, Givens fails to present evidence showing a reasonable probability that, if counsel had met and communicated with him more often, he would not have pleaded guilty and would have proceeded to trial. Therefore, argument (e) is without merit.

For argument (f), although the Virginia State Bar later investigated and/or disciplined defense counsel for missing hearings and misappropriation of client funds, counsel's actions in other cases have little, if any, relevance to her actions in Givens' proceedings. A petitioner must present evidence, or point to evidence in the record, of counsel's ineffectiveness directly related to his case; Givens fails to do so. *See Nickerson*, 971 F.2d at 1135. Therefore, argument (f) is without merit. Accordingly, I will grant the motion to dismiss as to Claim 2.[8]

### C.     Claim 3

In Claim 3, Givens asserts that counsel was ineffective because she coerced him into pleading guilty on the night before trial was scheduled to start. He alleges that he felt like defense counsel and the Commonwealth's Attorney worked together to coerce him into pleading guilty, that they rushed him into the plea, and that he lied when he told the court that he was satisfied with the services of defense counsel. On habeas review, the circuit court rejected the claim:

> The Court finds that Petitioner told it that he decided himself to plead guilty; was doing so freely and voluntarily, without being forced or threatened; and was "absolutely" satisfied with counsel. As he offered no reason to controvert these statements, he is bound by them, and they conclusively establish that he was not coerced.

---

[8] To the extent that the state court and the respondent's motion to dismiss did not directly address the underlying merits of any part of Claim 2, I conclude that Givens fails to establish that the state court's application of *Anderson* was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts.

16

*Givens v. Clarke*, No. CL16-1071-00, slip op. at 13 (citations and footnote omitted). I agree with the state circuit court's analysis.

A coerced guilty plea is not valid; a guilty plea "must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *McMann v. Richardson*, 397 U.S. 759, 766 (1970) (internal quotation marks and citations omitted). At his plea hearing, Givens told the circuit court that he understood the following: the charge against him, the plea agreement's terms, all of the court's questions, the potential punishment, and that he waived several rights. Guilty Plea Hr'g Tr. 7-10. He confirmed to the court that he had enough time to discuss the *Alford* plea, the plea agreement, and possible defenses with counsel. *Id.* Furthermore, he stated that he was not under the influence of any drugs, had not been threatened or forced to enter the *Alford* plea, did not have any mental or physical impairment, and he decided for himself, freely and voluntarily, to enter the *Alford* plea. *Id.* The state trial court then accepted Givens' plea and found it to be freely and voluntarily entered.

Givens' conclusory allegations fail to show coercion or that "extraordinary circumstances" invalidate his guilty plea. *See McMann*, 397 U.S. at 767; *Lemaster*, 403 F.3d at 221. Givens also fails to undermine the validity of his guilty plea by otherwise establishing that counsel was ineffective. *See Broce*, 488 U.S. at 574. Therefore, the state court's determination that Givens was bound by the representations he made under oath during his plea colloquy pursuant to *Anderson* was not contrary to, or an unreasonable interpretation of federal law, or an unreasonable determination of the facts, and I will grant the motion to dismiss as to Claim 3.

### D.     Claim 4

In Claim 4, Givens alleges he was denied due process, asserting that the evidence was insufficient because it would not have shown the "force, threat, or intimidation" element under Va.

Code § 18.2-67.2.[9] Givens reiterates the arguments counsel raised at his guilty plea hearing: Givens was a well-respected pastor within months of earning a doctorate degree at the time of his arrest, he had mentored many parishioners, his relationship with the victim was voluntary and consensual, and the victim's mother facilitated the relationship.

On direct appeal, the state court refused review of the sufficiency argument pursuant to *Perry v. Commonwealth*, 533 S.E.2d 651 (2000). *Givens v. Commonwealth*, No. 135-14-3, slip op. at 2 (Va. Ct. App. Sept. 23, 2014), Dkt. 17-3. In *Perry*, the Court of Appeals of Virginia determined that an *Alford* plea, like a traditional guilty plea, waives the defendant's right to appeal the sufficiency of the evidence. *Perry*, 533 S.E.2d at 653. The Fourth Circuit agrees: by entering an *Alford* plea, a Virginia criminal defendant "waive[s] his right to appeal the issue of whether the evidence was sufficient to prove beyond a reasonable doubt that he was guilty of that charge." *Price v. Johnson*, 218 F. App'x 274, 275 (4th Cir. 2007) (28 U.S.C. § 2254 petition) ("Price argues on appeal that there was insufficient evidence to sustain his conviction. Under *Perry*, regardless of whether Price entered an *Alford* plea or traditional guilty plea, he waived his right to challenge the sufficiency of the evidence."). Therefore, Givens' *Alford* plea waived his right to challenge the sufficiency of the evidence on appeal, and I conclude that the state court's determination was not contrary to, or an unreasonable interpretation of, federal law, or based on an unreasonable determination of the facts. Accordingly, I will grant the motion to dismiss as to Claim 4.

## V. CONCLUSION

For the reasons stated, I will grant the motion to dismiss. Givens' petition is without merit. An appropriate order will enter this day.

---

[9] Va. Code § 18.2-67.2 criminalizes sexual penetration when "[t]he act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person."

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the petitioner and to counsel of record for Respondent. Further, concluding that the petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability will be denied.

**ENTER:** This __30th__ day of January, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE